UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

          Plaintiff,

    v.                            Case No. 96-cr-40036-JPG-2

DAVID EARNEST,

          Defendant.

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on defendant David Earnest's *pro se* motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)), and its supplement (Docs. 120 & 129). The Court has also received and reviewed a number of letters from third parties in support of the motion (Docs. 125, 126, 130, & 134). The Government has responded (Doc. 133), and Earnest has replied to that response (Doc. 135).

**I.       Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt

of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release.  *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).  Otherwise the warden is not equipped to properly consider the defendant's request.

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants.[1]  *Gunn*, 980 F.3d at 1180.  The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.*  Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it.  *Id.*  A court that "strikes off on a different path risks an appellate holding that

---

[1] Absent Congressional action, there will be an applicable policy statement as of November 1, 2023.  The United States Sentencing Commission ("U.S.S.C.") has proposed an amended policy statement U.S.S.G. § 1B1.13 expressly addressing motions for compassionate release filed by defendants.  U.S.S.C, *Amendments to the Sentencing Guidelines*, U.S.S.G. §1B1.13, p.s. (April 27, 2023), (effective date November 1, 2023), https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023.

judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).[2] The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

> **(B)** **Age of the Defendant**.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> * * *
>
> **(D)** **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1 (2021).

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[3] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021);

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

[3] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

*Gunn*, 980 F.3d at 1180.  The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis.  *Gunn*, 980 F.3d at 1180.  The Court now turns to the specifics of the defendant's case.

## II.    Analysis

### A.    History

In July 1996, a jury convicted Earnest of one count of conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1) and one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 2).  Because Earnest's case preceded *Apprendi v. New Jersey*, 530 U.S. 466 (2000), no drug amounts were specified in the indictment, and the jury was not instructed that it must find a drug amount beyond a reasonable doubt.

At sentencing on January 23, 1997, the Court found Earnest's relevant conduct was more than 50 grams and less than 75 grams of crack cocaine.  It therefore sentenced him to the penalties in 21 U.S.C. § 841(b)(1)(A)(iii) (1997) which, at that time, provided the punishment for offenses involving 50 grams or more of crack cocaine.   Under U.S.S.G. § 2D1.1(c)(4) (1995), that relevant conduct yielded a base offense level of 32.  That base offense level was increased by 2 points under U.S.S.G. § 3C1.1 (1995) because the defendant committed perjury, establishing a total offense level of 34.  However, the Court further found that the defendant was a career offender under U.S.S.G. § 4B1.1 (1995).  Because the statutory maximum sentence under 21 U.S.C. § 841(b)(1)(A)(iii) (1997) was life, the offense level applicable under U.S.S.G. § 4B1.1(A) (1995) was 37.  Because the total offense level based on U.S.S.G. § 4B1.1 (1995) was greater than the total offense level based on U.S.S.G. § 2D1.1 (1995), the Court applied the

total offense level based on U.S.S.G. § 4B1.1 (1995).

The defendant's criminal history category was VI, established by his career offender status under U.S.S.G. § 4B1.1.  This resulted in a mandatory guideline sentencing range of 360 months to life in prison.  The Court imposed a sentence of 420 months on each count, to run concurrently, plus a 5-year term of supervised release.  After a remand to clarify a sentencing issue, *see United States v. Earnest*, 129 F.3d 906 (7th Cir. 1997), the Court of Appeals affirmed the Court's judgment.  *See United States v. Earnest*, 185 F.3d 808 (7th Cir. 1999).

Earnest filed a motion under 28 U.S.C. § 2255 in September 2001.  *Earnest v. United States*, 01-cv-4240-JPG.  In that motion, Earnest asserted that, in light of *Apprendi*, his two concurrent sentences of 420 months, each above the statutory maximum for that crime, were unconstitutional because the Court, not the jury, found the facts necessary for his sentence.  In finding that Earnest's motion was filed beyond the one-year limitations period of 28 U.S.C. § 2255(f), the Court found *Apprendi* was not retroactive on collateral review.  Later, the Seventh Circuit Court of Appeals and the Supreme Court confirmed that position.  *See Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002); *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (holding *Ring v. Arizona*, 536 U.S. 584 (2002), which relies on *Apprendi*'s holding, was not retroactive).  The Court of Appeals declined to issue a certificate of appealability to allow Earnest to appeal.

More recently, the Court declined to reduce Earnest's sentence pursuant to § 404(b) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), even though he was eligible for a reduction (Doc. 110).  In denying Earnest's motion for a reduction in July 2020, the Court noted the following:

> The Court agrees with its initial assessment [at sentencing] that Earnest is unlikely to ever be able to follow rules and get along in society.  His post-

conviction conduct has demonstrated as much. Additionally, the accomplishments he has made in prison are minimal: 61 hours of education classes over a 24-year period of incarceration amounts to a little more than 2 hours of education per year; and working a job assigned by the prison is a bare minimum. The Court commends Earnest for earning his GED, but that accomplishment is far overshadowed by his substantial disciplinary history of infractions that display violence and disregard for rules. Indeed, he has had more disciplinary citations than hours spend in education classes. And he has earned himself 262 more months in prison by committing two assaults on correctional officers. The Court is firmly convinced, for the reasons stated at Earnest's original sentencing hearing as well as his conduct since then, that he remains a danger to the public, which needs to be protected from Earnest. The Court has further considered the other factors in 18 U.S.C. § 3553(a) and finds that they do not weigh against this conclusion. It is for these reasons that the Court declines to reduce Earnest's sentence pursuant to the First Step Act.

Mem. and Order 6-7 (Doc. 110). The Court of Appeals dismissed Earnest's appeal of this order as frivolous. *United States v. Earnest*, 834 F. App'x 259 (7th Cir. 2021).

B.    Motion

Earnest asks the Court to reduce his sentence to the point where he will have served two-thirds of his 420-month sentence—May 24, 2034. He argues that he is 56 years old now and in 2016 experienced a change in his life from hating to helping other people. He attributes his past hatred in part to oppression and hatred he experienced as a Black man and the psychological effect it had on him. He is now participating in several programs, some of which he started and one of which—the Positive Reassessment of Our Future ("PROOF") program—is designed to help correct past errors to work toward a better future. He concludes that in light of this change, in 2034 he will no longer be a danger to society and offers as evidence the lowering of his security level from high to something lower. He offers multiple character letters in support of his request. He also reiterates his *Apprendi* argument that his maximum sentence on each count should have been 20 years in prison since the indictment pled and the jury found no specific drug amounts.

6

In response, the Government argues that Earnest has failed to show extraordinary and compelling reasons for release, his *Apprendi* argument should not be raised in this kind of motion, and he remains a danger to the public.  The Government argues that his starting two programs in prison and reduction to a medium risk of recidivism do not outweigh his violent and drug-ridden history in and out of prison.  It believes, as the Court did at Earnest's sentencing, that Earnest has two faces he shows—an upstanding Boy Scout and a career offender.  It then suggests the Court disregard the character letters from those who have only seen the Boy Scout side.  It also observes that Earnest has still not taken responsibility for his own conduct but instead blames the oppressions of society.  In support of its argument that Earnest remains a danger to the community, the Government has submitted his BOP disciplinary record.

In reply, Earnest points out that, although he had a bad disciplinary history in prison, he has not had an infraction since 2016, when he decided to turn his life around.  Again, he argues that he was sentenced 26 years ago, and he has changed since then, having received an education, having read numerous inspirational books, and having had a change of heart.  The PROOF program that he founded is evidence of that change.  And he further explains the psychological damage he suffered during his life.

The Government has not invoked exhaustion of remedies as a defense, so has waived that argument.

Despite Earnest's amazing turn-around over the last seven years, the Court cannot find he has established extraordinary or compelling reasons for release.  "[T]he sort of extraordinary and compelling circumstance that § 3582(c)(1) addresses is some new fact about an inmate's health or family status, or an equivalent post-conviction development, not a purely legal contention for which statutes specify other avenues of relief. . . ."  *United States v. Von Vader*, 58 F.4th 369,

371 (7th Cir. 2023).  It is not a non-retroactive change in the law or simple good behavior.

Earnest claims the Court violated *Apprendi* principles when it sentenced him in 1997, three years before the Supreme Court decided the case.  Any *Apprendi* violation cannot amount to an extraordinary or compelling reason under § 3582(c)(1)(A)(i).[4]  "There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255," if possible.  *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 1784 (2023).  In *United States v. Brock*, 39 F.4th 462, 466 (7th Cir. 2022), the Court of Appeals noted:

> Judicial decisions, whether characterized as announcing new law or otherwise, cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction. To permit otherwise would allow § 3582(c)(1)(A) to serve as an alternative to a direct appeal or a properly filed post-conviction motion under 28 U.S.C. § 2255.  We rejected that view in *Thacker* and *Martin* and do so again here.

However, where an independent "extraordinary and compelling" reason exists, the Court may consider such non-retroactive changes in determining the appropriate reduction or weighing the § 3553(a) factors.  *King*, 40 F.4th at 596; *United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021), *cert denied*, 142 S. Ct. 1363 (2022); *United States v. Black*, 999 F.3d 1071, 1075-76 (7th Cir. 2021).

Additionally, Earnest's good conduct in prison over the past seven years, while greatly to

---

[4] The Court reinforces the fact that it imposed a 420-month sentence because it was the appropriate sentence to give in light of the § 3553(a) factors.  Had *Apprendi* been decided then and had the guidelines been advisory, the Court would have ordered a 240-month sentence in prison for each count and would have ordered that they run consecutively to the extent necessary to achieve a 420-month sentence.

be praised, is not enough to qualify as an extraordinary or compelling reason for release.  *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022).  Exemplary behavior is what is expected, not something extraordinary.

And finally, Earnest's age—56 years old—is not an extraordinary or compelling reason. The Sentencing Guidelines suggest those over 65 who are in bad health may have extraordinary and compelling reasons, but Earnest's situation—56 years old and in good health—is too far a stretch to justify release.  No doubt he is older and wiser than he was when he committed the crimes for which he is—and will continue to be—incarcerated, but that does not justify release.

Even combined, all his arguments do not amount to extraordinary and compelling reasons for relief.  Should any such circumstances arise in the future, Earnest may reapply for compassionate release after requesting it first from the warden of his institution.

As for Earnest's dangerousness, the Court's analysis of the § 3553(a) factors at the 1997 sentencing hearing continue to apply now, as do the reasons that led the Court to deny him a reduction under § 404(b) of the First Step Act in 2020.  While it is true, a record of good behavior and positive achievements can overcome even a long, violent history of crimes and infractions, seven years of good behavior is not enough for Earnest.  Just like a person can change in seven years, they can also change back in eleven years, the length of time until the date Earnest suggests the Court release him—or 31 years, considering the additional sentence for his 2004 convictions.  He is still too dangerous now, and while the Court hopes he will not be in eleven years, he may be.  It is too risky to bet on that now.

That being said, the Court sincerely commends Earnest for all of his achievements in prison and his spotless disciplinary record since 2016, a great feat.  And it is a testament to Earnest's change for the better that his friends and family in the community and in prison are

9

behind him and are willing to write such warm, supportive letters to the Court on his behalf. With a continuing commitment to helping others and resisting hate, and with the loving friends and family support that he has, someday Earnest may look forward to an early release, but that day is not today.

## III.    Conclusion

For all of these reasons, the Court **DENIES** the defendant's motion for compassionate release (Doc. 120).

**IT IS SO ORDERED.**
**DATED:  October 23, 2023**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**